IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KEVIN CROWDEN                                                                    PLAINTIFF

v.                                    Civil No. 13-2052

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Kevin Crowden, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.   **Procedural Background:**

The Plaintiff filed his applications for DIB and SSI in December 2010, alleging an onset date of November 28, 2010, due to crohn's disease, ulcers, elbow problems, stroke, heart stints, carotid blockage in the left side of the neck, back pain, and coronary artery disease (CAD). Tr.132, 164, 180-181, 191, 194. His claims were denied both initially and upon reconsideration. An administrative hearing was then held on December 13, 2011. Plaintiff was both present and represented at that hearing.

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

A the time of the administrative hearing, Plaintiff was 44 years old and possessed a general equivalency degree. Tr. 37, 38, 132-138, 163. He had past relevant work ("PRW") as a fast food worker and fast food cook. Tr. 25, 172-179.

On March 9, 2012, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's CAD status post two-vessel stenting, cardiomyopathy, history of transient ischemic attack/cerebrovascular accident, left ankle degenerative joint disease, and crohn's disease did not meet or equal any Appendix 1 listing. Tr. 14-17. The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work, except "the claimant cannot climb ladders, ropes, or scaffolds; can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; and must avoid concentrated exposure to hazards (machinery, heights, etc.) to include no driving as a part of work duties. Tr. 17. With the assistance of a vocational expert, the ALJ concluded Plaintiff could perform work as a small product assembler, small production machine operator, and small product inspector. Tr. 26.

Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 15, 17.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A. The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

3

gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Discussion:

The undersigned is concerned by the ALJ's RFC determination in this case. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be

supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

The record reveals that Plaintiff suffered from coronary artery disease status post stent placement, two strokes, and uncontrolled hypertension. On January 25, 2011, Dr. Chan Nousannavane completed an attending physician statement noting Plaintiff's diagnoses were acute coronary syndrome, systolic congestive hearth failure, hypertension, CVA (past), catherization, and acute renal failure. Tr. 285. He opined that Plaintiff would need to frequently lie down to rest throughout the day, would need to take unscheduled breaks during an 8 hour shift; was not capable of working 40 hours per week, and would have 3 work absences per month. Dr. Nousannavane also indicated that he did not expect a fundamental or marked change for the better in the future. Tr. 285.

On April 18, 2011, Plaintiff was examined by Ronald Kantola at the Arkansas Heart Center, for a consultative examination. Tr. 294-301. An echocardiogram completed during the examination revealed a mild reduction in left ventricular systolic function in a global fashion with an estimated ejection fraction of 50% with moderate concentric left ventricular hypertrophy, mild left atrial enlargement, and mild mitral insufficiency. Tr. 298. Dr. Kantola noted that Plaintiff suffered from coronary artery disease with stenting in the LAD and RCA after an acute heart attack; had experienced two strokes in the past; and, experienced sharp retosternal chest discomfort with activity (aggravated by deep breathing, eating, twisting and turning movements, as well as palpation of the chest wall). His chest pain was relieved with nitroglycerine after about 20 minutes whereas it took about two or three hours for it to get better with rest alone.

Further, Plaintiff was limited to walking one block on flat ground by shortness of breath. Dr. Kantola diagnosed Plaintiff with cardiomyopathy, which improved after stent implantation; uncontrolled hypertension; dislipidemia; and, a history of stroke with some problems with speech and some arm clumsiness. He was of the opinion Plaintiff would have limitations that would impede his ability to work. And, Dr. Kantola felt Plaintiff would need to have close medical follow-up to make certain his cardiomyopathy did not deteriorate.

Sadly, however, neither Dr. Nousannavane nor Dr. Kantola were asked to complete an RFC assessment. And, the record contains no RFC assessment from an examining source. The ALJ contends that Dr. Kantola's indication that the results of Plaintiff's echocardiogram did reveal improvement indicates that his impairment was not as severe as alleged. We disagree. From the record presently before the court, we simply can not determine the limitations Plaintiff's heart attack and strokes placed on his ability to perform work-related activities. Thus, given his medical history, as well as both doctors's indications that his condition would impact his ability to perform work-related activities, we believe that remand is necessary to allow the ALJ to obtain RFC assessments from Drs. Nousannavane and Kantola. If either doctor is unable to complete the assessment, a consultative examination, complete with a full RFC assessment, should be ordered.

Dr. Kantola also indicated that Plaintiff suffered from some speech problems and arm clumsiness following his strokes. Because the ALJ found that Plaintiff's medical record failed to reveal any permanent limitations resulting from his strokes, on remand, the ALJ is also directed to reconsider the limitations associated with Plaintiff's strokes by requesting additional information from Plaintiff's treating doctors.

6

V.  **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 25th day of February 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)